IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WELAI GRANT, | * | |
| PLAINTIFF, | * | |
| v. | * | Civil Action No. RDB-21-2173 |
| BALTIMORE POLICE DEPARTMENT, | * | |
| | * | |
| DEFENDANT. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Plaintiff Welai Grant ("Plaintiff" or "Grant") brings this employment discrimination case against her current employer, Defendant Baltimore Police Department ("BPD"). Grant seeks monetary, injunctive, and declaratory relief against BPD for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Counts I, II, III, IV); 42 U.S.C. § 1981 (Count V); and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-101 *et seq.* (Count VI). Presently pending is BPD's Motion to Dismiss for Failure to State a Claim. (ECF No. 7.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, BPD's Motion to Dismiss (ECF No. 7) is GRANTED. Plaintiff's race and gender discrimination claims in Counts I, II, and VI are DISMISSED WITH PREJUDICE. Plaintiff's claim under 42 U.S.C. § 1981 (Count V) is also DISMISSED WITH PREJUDICE. Her retaliation and hostile work environment claims in Counts III, IV, and VI are DISMISSED WITHOUT PREJUDICE, with leave to timely file an Amended Complaint.

**BACKGROUND**

**I.     Factual Allegations**

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Welai Grant is an African-American woman. (Compl., ECF No. 1 ¶ 13.) She is employed as a Sergeant with the Baltimore Police Department. (*Id.* ¶ 16.) Grant began her employment with BPD on June 23, 2008. (*Id.* ¶ 18.) On or around August 2018, she was assigned to the Recruitment Section of BPD. (*Id.* ¶ 19.) Grant alleges that on or around September 2018, she authored an administrative report that detailed a complaint she received from a City Hall employee against Major James Handley, a white male who was employed by the BPD. As a result of this report, Major Handley was investigated by the BPD Internal Affairs Ethics Unit. (*Id.* 20.) On or around October 2018, Major Handley ordered Grant into his office for questioning and demanded details regarding the complaint. (*Id.* ¶ 21.) Grant alleges that Handley attempted to intimidate and threaten her into revealing information about the complaint by referring to his "friends in high places." (*Id.*)

On or around May 2019, Major Handley was named Acting Major of Recruitment. (*Id.* ¶ 25.) In July 2019, Major Handley was assigned to the Recruitment Section. (*Id.* ¶ 27.) In July 2019, Major Handley ordered Grant into his office and warned her that he would retaliate against anyone who "made a statement against him." (*Id.* ¶ 28.) On or around August 1, 2019, during a conference call, Grant witnessed Major Handley refer to a BPD

applicant using a racial slur. (*Id.* ¶ 29.) Grant confirmed with two other BPD employees that they had heard Handley's comment. (*Id.*) Grant immediately went to the Inspector General's Office to lodge a formal complaint against Handley. (*Id.*) On or around August 7, 2019, Grant received an email from BPD Deputy Commissioner James Gillis instructing her to report to his office to discuss the work of the Recruitment Unit. During the meeting, Deputy Commissioner Gillis remarked that he heard that Grant reported that Major Handley had used a racial slur when referring to an applicant. Grant informed Deputy Commissioner Gillis that she was uncomfortable discussing the subject of the complaint. Police Commissioner Michael Harrison then entered Deputy Commissioner Gillis' office. Commissioner Harrison informed Grant that he had come to discuss Major Handley. Grant again stated that she did not feel comfortable discussing the matter because she knew that Handley and Gillis had a close personal relationship and she feared retaliation. Commissioner Harrison ended the meeting by stating that Grant was imagining "all of the bad things that will happen to you if you speak up and report corruption" and advised her to "learn to blow this stuff off without letting it affect you." (*Id.* ¶ 35.)

Grant alleges that two weeks after the meeting with Deputy Commissioner Gillis and Commissioner Harrison, Major Handley became increasingly antagonistic towards her. One employee informed Grant that Major Handley had complained about a "short bitch" who "is getting herself involved" in matters that do not concern her. (*Id.* ¶ 36.) Grant believed that Major Handley's comments referred to her. On or about August 14, 2019, Grant was approached by Sergeant Regina Richardson, who stated that she believed that the applicant who accused Major Handley of using a racial slur had been fabricating the story. Also in

August 2019, Grant applied for a position in the Homicide Unit but did not receive the transfer. Around this time, Grant alleges that Richardson "attempted to violently hit [her] with her bag while exiting the elevator." (*Id.* ¶ 40.) Grant then filed an Internal Affairs complaint against Richardson and another sergeant. She alleges that their misconduct prevented her from being considered for the position in the Homicide Unit.

On October 3, 2019, Grant was informed by the Public Integrity Bureau that an investigation had been initiated against her regarding an email she sent to Sergeant Richardson. (*Id.* ¶ 41.) In the email, Grant stated that Sergeant Richardson was "a white woman trapped in a black woman's body." (*Id.* ¶ 42.) In January 2020, Grant provided a recorded statement explaining her perspective on the email. Also in January 2020, Grant was contacted by Internal Affairs to provide a statement regarding her complaint against Major Handley stemming from his alleged use of a racial slur towards an applicant. Grant was informed that Major Handley alleged that she and the BPD applicant were friends and that they had joined together to create a false story about Major Handley's use of a racial slur. (*Id.* ¶ 43.) Grant alleges that Internal Affairs ultimately issued sustained findings against Major Handley, who subsequently retired and was never formally reprimanded for his use of a racial slur. (*Id.* ¶ 44.)

On or about July 30, 2020, the Internal Affairs Division of the BPD issued sustained findings of misconduct against Grant relating to her email to Sergeant Richardson. (*Id.* ¶ 45.) The Internal Affairs Division recommended that Grant be suspended without pay for 15 days, be issued a severe Letter of Reprimand, and be directed to participate in a workplace violence training seminar. On the advice of counsel, who had been assured that the findings

would not affect Grant's promotional opportunities, Grant decided not to contest the punishment.

On September 6, 2020, Grant was informed that she was being transferred to the Special Events Unit under the Patrol Division. (*Id.* ¶ 47.) After she was transferred, Sergeant Richardson took over Grant's prior position in the Recruitment Unit. On or around June 8, 2021, Grant attended a meeting with Deputy Commissioner Briscoe. Deputy Commissioner Briscoe informed Plaintiff that she was not eligible for promotion under Draft Policy 1721 because of the sustained findings against her stemming from the email to Sergeant Richardson.[1] On or around June 11, 2021, Grant discussed the denial of her promotion with BPD Equity Officer Bill Joyner. Grant informed Joyner that she believed the sustained findings and draft policy were a pretext for denying her promotional opportunities. (*Id.* ¶ 54.) On June 29, 2021, Grant received an absent without leave ("AWOL") notice for failure to attend her shift at a June 20, 2021 Baltimore Orioles baseball game. (*Id.* ¶ 57.) She alleges that she had not been scheduled to work that day and had instead traveled to New York to visit family. Later, Grant discovered that Sergeant Atwood, a white male, had been scheduled to work that day but had received approval for vacation leave without confirmation of his work schedule.

On or around July 29, 2021, Grant was denied another transfer opportunity. (*Id.* ¶ 61.) On August 10, 2021, Grant's superiors called her in for a meeting. At the meeting, Grant explained that she was under severe stress from her work environment and explained

---

[1] Plaintiff has attached Draft Policy 1721 to her brief in opposition to BPD's motion to dismiss. (ECF No. 8-9.) The Draft Policy notes that to be eligible for promotion to the Classified Ranks, candidates must not have any sustained findings on "Egregious or Serious Acts of Misconduct" within the past three year. (*Id.* at 4.)

that her mental health was suffering. That same day, she was ordered to take a Fitness for Duty examination. (*Id.* ¶ 65.) Grant informed her superiors that she was going to be out on medical leave effective August 11, 202. On or around August 15, 2021, Grant was denied another transfer opportunity. (*Id.* ¶ 69.)

## II.     Procedural History

On May 4, 2020, Grant filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). She was issued a right to sue letter on May 26, 2021. (*Id.* ¶ 7.) On August 13, 2021, she filed a second charge of discrimination with the EEOC. (*Id.* ¶ 8.) She received a right to sue letter in connection with that charge on August 19, 2021. (*Id.*) On August 24, 2021, Grant filed suit in this Court. (ECF No. 1.)

### STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a

"formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L. Ed. 2d 179 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to

dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Accordingly, in ruling on BPD's Motion to Dismiss, this Court will consider Plaintiff's EEOC charges.[2] *See Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 907 n. 1 (D. Md. 2017) (explaining that "the EEOC charge and its related documents are integral to the Complaint"); *Bowie v. Univ. of Md. Med. Sys.*, No. ELH-14-03216, 2015 U.S. Dist. LEXIS 42433, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint." (citations omitted)).

## ANALYSIS

### I.  Title VII Race and Gender Discrimination Claims (Counts I and II)

Plaintiff's Title VII race and gender discrimination claims are subject to dismissal for failure to exhaust administrative remedies. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-3(a). To assert a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851, 204 L. Ed. 2d 116 (2019); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016). To exhaust, a plaintiff must file a "charge" of

---

[2] BPD has attached Plaintiff's charges of discrimination to its Motion to Dismiss. (ECF Nos. 7-3, 7-4.) Plaintiff does not dispute the authenticity of those documents. Plaintiff, on the other hand, has attached to her opposition brief a series of letters she wrote to BPD officials complaining of allegedly discriminatory practices. (Ex. List, ECF No. 8-2.) Plaintiff does not contend that she attached those letters to her EEOC charges. This Court will not consider those documents at the motion to dismiss stage because they are not integral to Plaintiff's Complaint.

discrimination with the EEOC or an appropriate state or local agency within 180 days of when "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). However, Maryland is a deferral state. Therefore, a claim must instead be filed no more than 300 days after the alleged unlawful employment practice. *See Garnes v. Maryland*, No. RDB-17-1430, 2018 U.S. Dist. LEXIS 672, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *see also Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008). The Supreme Court recently held that a plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (quoting *Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005) (per curiam)). Although a defendant may waive arguments related to administrative exhaustion, if the defendant asserts objections in a timely fashion such arguments may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg.,Inc.,* No. RDB-18-334, 2019 U.S. Dist. LEXIS 156793, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

When a plaintiff brings suit in federal court following the issuance of a right to sue letter, the plaintiff's complaint must meet certain requirements. For example, when a plaintiff brings a charge with the EEOC, that charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This requirement ensures that the employer is put on notice of its employee's claims and is afforded an opportunity to resolve them out of court. *Miles v. Dell, Inc.*, 429

9

F.3d 480, 492 (4th Cir. 2005). In a subsequent suit, plaintiffs may only advance those claims which are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Mindful that complainants typically advance EEOC charges without the assistance of counsel, courts afford their scope a liberal construction. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted). Nevertheless, courts may not permit plaintiffs to assert one type of discrimination in an EEOC charge and later pursue other types of discrimination in formal litigation. *Id.*

In this case, Plaintiff's May 4, 2020 Charge of Discrimination lists only "retaliation" as the basis for her claim. (ECF No. 7-3 at 5.) Notably, Plaintiff did not select boxes indicating that she was raising claims based on either race or sex. The particulars of the charge give no indication that Plaintiff has alleged race- or gender-based discrimination against herself. Instead, Plaintiff alleges that Major Handley used a racial slur to refer to Black applicant, an incident she reported to the Office of the Inspector General. (*Id.*) Plaintiff further alleges that she has been "retaliated against for engaging in protected activity in opposition of discrimination" but not that she herself suffered any discrimination on the basis of race or gender. Accordingly, Plaintiff's May 4, 2020 Charge of Discrimination could not have put BPD on notice that she was asserting claims for race and gender discrimination. Likewise, Plaintiff's August 13, 2021 Charge of Discrimination states on its face that the sole basis for the alleged discrimination is retaliation. (ECF No. 7-1 at 1.) In the narrative section of the August 13, 2021 Charge, Plaintiff incorrectly states that the May 4, 2020 Charge alleged "race, color, and sex discrimination and retaliation." (*Id.*) As noted

10

above, the May 2020 Charge, like the August 2021 Charge, alleged discrimination based only on retaliation. Indeed, nowhere in the August 2021 Charge does Plaintiff allege that she was discriminated against on the basis of her race or gender.

The exhaustion requirement under Title VII is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko*, 429 F.3d at 510. Rather, the exhaustion requirement "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). The requirement ensures that the employer is put on notice of its employee's claims and is afforded an opportunity to resolve them out of court. *Miles*, 429 F.3d at 492. In this case, neither of Plaintiff's charges of discrimination could have put BPD on notice that Plaintiff asserted claims of discrimination on the basis of her race and gender. Accordingly, Plaintiff's claims in Counts I and II are DISMISSED WITH PREJUDICE.[3]

## II.     Title VII Hostile Work Environment Claim (Count III)

Plaintiff's Title VII claim for hostile work environment is also subject to dismissal, albeit without prejudice and with leave to amend. To state a claim under Title VII for hostile

---

[3] As to Plaintiff's hostile work environment and retaliation claims, this Court concludes that Plaintiff has exhausted her administrative remedies. This Court does not find that Plaintiff's charges reference "different time frames, actors, and discriminatory conduct" from the conduct described her complaint in support of the hostile work environment and retaliation claims. *Chacko*, 429 F.3d at 506. Accordingly, the charges are "reasonably related to the original complaint" such that this Court will analyze the merits of BPD's dismissal arguments as to Plaintiff's hostile work environment and retaliation claims. *Jones*, 551 F.3d at 300

work environment based on race, the plaintiff must allege that there was: "'(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). *See also Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 309 (D. Md. 2015) (discussing the standard to establish a hostile work environment based on sex).

In weighing whether conduct was sufficiently "severe or pervasive," courts consider the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). The Fourth Circuit has set a "high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The Fourth Circuit has recognized that,

> [w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

*Id.* at 315-16 (quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)). Ultimately, "[w]hether the environment is objectively hostile or abusive is

judged from the perspective of a reasonable person in the plaintiff's position." *Holloway v. Maryland*, No. 20-1958, 2022 U.S. App. LEXIS 11170, at *13 (4th Cir. Apr. 25, 2022).

In this case, Plaintiff has not sufficiently alleged that she was the recipient of any unwelcome conduct on the basis of her race. While she does allege that Major Handley made a disparaging remark about a Black job applicant, she does not allege that any racially charged language was ever directed at her. As to gender, Plaintiff has alleged that she was informed that Major Handley made reference to a "short bitch" and that she believed the comment was directed at her. (ECF No. 1 ¶ 36.) Apart from that single, second-hand remark, Plaintiff has alleged no gender-based conduct against her. Moreover, Plaintiff's description of her working conditions falls short of alleging an abusive work environment. As the Fourth Circuit has held, "[e]valuation and criticism of one's work performance, while perhaps unpleasant, is not abusive." *Holloway v. Maryland*, No. 20-1958, 2022 U.S. App. LEXIS 11170, at *14 (4th Cir. Apr. 25, 2022). Accordingly, Plaintiff's Title VII hostile work environment claim is DISMISSED WITHOUT PREJUDICE. Plaintiff will be granted leave to amend her Complaint.[4]

---

[4] Plaintiff has not explicitly requested leave to amend her Complaint. However, Federal Rule of Civil Procedure 15(a)(2) permits a court to grant leave to amend a pleading "when justice so requires." The United States Court of Appeals for the Fourth Circuit has "interpreted [Rule] 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426 4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). As to Plaintiff's hostile work environment and retaliation claims, those factors are not present. Accordingly, Plaintiff will be granted leave to file an Amended Complaint.

### III. Title VII Retaliation Claim (Count IV)

Likewise, Plaintiff's Title VII retaliation claim is subject to dismissal without prejudice and with leave to amend. Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)). For purposes of the second element, a plaintiff must allege that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 491-92 (D. Md. 2013) (quoting *Madock v. McHugh*, No. ELH-10-2706, 2011 U.S. Dist. LEXIS 92392, 2011 WL 3654460, at *26 (D. Md. Aug. 18, 2011)). The standard for an "adverse action" in a retaliation claim "is less strenuous than the standard in a discrimination claim, because the adverse employment action in a retaliation case need not affect an employee's terms or conditions of employment." *Id.* (internal citations and quotation marks omitted).

In this case, Plaintiff has sufficiently alleged that she engaged in protected activity when she complained of Major Handley' use of a racial slur and filed charges of discrimination against the BPD. At the pleading stage, Plaintiff's allegations of adverse employment action also pass muster. Plaintiff has alleged that she was denied transfers on

14

several occasions after having engaged in the protected activity. She has also alleged that she was denied promotional opportunities on the basis of a draft policy which had not at the time taken effect. Plaintiff has failed, however, to allege sufficiently that any adverse employment action was causally linked to her protected activity. Indeed, it appears from Plaintiff's Complaint that her own racially charged email to Sergeant Richardson prompted at least some of the denials of transfer and promotion. Nevertheless, Plaintiff will be permitted to amend her Complaint to remedy her pleading deficiencies. Accordingly, Plaintiff's Title VII retaliation claim is DISMISSED WITHOUT PREJUDICE.

### IV.     Race Discrimination Claim under 42 U.S.C. § 1981 (Count V)

Plaintiff has voluntarily withdrawn her claim of race discrimination under 42 U.S.C. § 1981 because, as BPD notes, claims against state actors for violation of rights guaranteed in § 1981 are properly pleaded under § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) ("the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."); *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Accordingly, Plaintiff's claim under § 1981 is DISMISSED WITH PREJUDICE.

### V.     Maryland Fair Employment Practices Act Claims (Count VI)

Plaintiff's Maryland Fair Employment Practices Act claims are also subject to dismissal. Pursuant to the decision of the Maryland Court of Appeals in *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 914 A.2d 735, 742 (Md. 2007), this Court applies "Title VII case law in adjudicating FEPA claims." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 U.S. Dist. LEXIS 110316, at *12 n.3 (D. Md. Sep. 28, 2011). Therefore, to

the extent Plaintiff raises MFEPA discrimination claims on the basis of race and gender, those claims are subject to dismissal with prejudice for failure to exhaust administrative remedies. *See Marshall v. Anne Arundel Cty.*, Civil Action No. ELH-18-74, 2019 U.S. Dist. LEXIS 22561, at *23 (D. Md. Feb. 12, 2019) (noting that the MFEPA requires administrative exhaustion prior to filing suit). To the extent Plaintiff raises retaliation and hostile work environment claims under the MFEPA, those claims are subject to dismissal without prejudice and with leave to amend for the same reasons as Plaintiff's Title VII retaliation and hostile work environment claims. *See Alexander v. Marriott Int'l, Inc.*, No. RWT 09cv2402, 2011 U.S. Dist. LEXIS 33329, at *15 (D. Md. Mar. 29, 2011) (noting that the MFEPA "is the state law analogue to Title VII"). Accordingly, Plaintiff's MFEPA race and gender discrimination claims are DISMISSED WITH PREJUDICE, and her MFEPA retaliation and hostile work environment claims are DISMISSED WITHOUT PREJUDICE.[5]

## CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this 3rd day of May, 2022 that:

---

[5] BPD argues that it is entitled to sovereign immunity against Plaintiff's MFEPA claims. In response, Plaintiff argues generally that "[t]here is nothing in the Maryland Code related to claims of employment discrimination filed by a police officer, who is a public employee, against her employer, the Baltimore Police Department, which is a public employer." (ECF No. 8-1 at 13.) *Accord Jacques v. Balt. City Police Dep't*, No. SAG-21-02682, 2022 U.S. Dist. LEXIS 65778, at *21 (D. Md. Apr. 8, 2022) ("It is well established that for purposes of state sovereign immunity, BPD is a State agency.). Neither party in this case addresses the case law from this District concerning suits against the BPD which raise MFEPA claims. *See, e.g.*, *Brown v. Balt. Police Dep't*, Civil Action No. RDB-11-00136, 2011 U.S. Dist. LEXIS 147219, at *41 (D. Md. Dec. 21, 2011) (permitting MFEPA retaliation claims against the BPD to proceed); *but see Jackson v. Balt. Police Dep't*, No. WDQ-11-3569, 2013 U.S. Dist. LEXIS 38463, at *26 (D. Md. Mar. 15, 2013) (holding that sovereign immunity bars MFEPA suits against the BPD). Should Plaintiff file an Amended Complaint and should BPD move to dismiss that Amended Complaint, the parties must address this line of cases in their briefing.

1. BPD's Motion to Dismiss (ECF No. 7) is GRANTED. Plaintiff's race and gender discrimination claims in Counts I, II, and VI are DISMISSED WITH PREJUDICE. Plaintiff's claim under 42 U.S.C. § 1981 (Count V) is also DISMISSED WITH PREJUDICE. Her retaliation and hostile work environment claims in Counts III, IV, and VI are DISMISSED WITHOUT PREJUDICE;

2. Plaintiff is GRANTED leave to file an Amended Complaint by May 25, 2022. If an Amended Complaint is not filed by that date, the Clerk of this Court is directed to CLOSE this case; and

3. The Clerk of this Court shall transmit copies of this Memorandum Order to counsel of record.

_____/s/_____

Richard D. Bennett
United States District Judge