## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WELAI GRANT, | * | |
| Plaintiff, | * | |
| | | Civil Action No. RDB-21-2173 |
| v. | * | |
| BALTIMORE CITY POLICE DEPARTMENT, | * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The Plaintiff Welai Grant ("Plaintiff" or "Grant") initially brought this action against her employer, Defendant Baltimore City Police Department ("Defendant" or "BPD") in August of 2021. (ECF No. 1.) The original six-count Complaint alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* (Counts I, II, III, and IV); 42 U.S.C. § 1981 (Count V); and the Maryland Fair Employment Practices Act ("MFEPA") (Count VI). For the reasons set forth in this Court's Memorandum Order of May 3, 2022 (ECF No. 14), Grant's original race and gender discrimination claims under Title VII in Counts I and II as well as those related state law claims asserted in Count VI under MFEPA were DISMISSED WITH PREJUDICE. Grant's original race discrimination claim under 42 U.S.C. § 1981 in Count V was also DISMISSED WITH PREJUDICE because Grant voluntarily withdrew this claim as it is properly pleaded under 42 U.S.C. § 1983 ("Section 1983"). The Plaintiff's hostile work environment and retaliation claims in Counts III and IV and the related state claims under MFEPA asserted in Count VI were DISMISSED

WITHOUT PREJUDICE. The Plaintiff was granted leave to file an amended complaint with respect to these retaliation and hostile work environment claims.

Grant has now filed a four-count Second Amended Complaint (ECF No. 20) alleging hostile work environment based on race and sex and retaliation under Title VII (Counts I and II) and the Maryland Fair Employment Practices Act ("MFEPA") (Count IV). She has also now asserted a claim under 42 U.S.C. § 1983 ("Section 1983") for violation of her Fourteenth Amendment liberty interest based on her race and acts of retaliation (Count III). Once again, Defendant's Motion to Dismiss (ECF No. 21) is pending before this Court. The related filings (ECF No. 22, 25) have been reviewed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021).

For the reasons that follow, Defendant's Motion is GRANTED IN PART and DENIED IN PART. Specifically, Counts I, III, and IV are DISMISSED. There are simply insufficient allegations of a hostile work environment, as alleged in Count I, based upon Grant's race or sex and therefore this claim shall be DISMISSED WITH PREJUDICE. Plaintiff's Section 1983 claim in Count III must also be DISMISSED WITH PREJUDICE as a pure retaliation claim is not cognizable under the Fourteenth Amendment's Equal Protection Clause. With respect to Grant's state claim under the Maryland Fair Employment Practices Act as alleged in Count IV, there has been no waiver of sovereign immunity under the Eleventh Amendment. Therefore, this claim must be DISMISSED WITHOUT PREJUDICE for lack of federal subject matter jurisdiction.

However, the Defendant's Motion to Dismiss Count II of the Second Amended Complaint alleging retaliation shall be DENIED. This Court has previously held in its

Memorandum Order of May 3, 2022 (ECF No. 14), that Grant has sufficiently alleged that she engaged in a protected activity and suffered an adverse employment action. She was permitted to amend her Complaint to remedy insufficient pleading with respect to a causal connection between the adverse employment action and her protected activity. She has done so.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). This Court has discussed the facts of this case at length in its previous Memorandum Order dated May 3, 2022 (ECF No. 14), but will reiterate some of the facts for completeness. Plaintiff is an African American female and is employed as a Police Sergeant in the Baltimore City Police Department, where she has worked since 2008. (ECF No. 20 at 4.) In September 2018, Plaintiff filed her first complaint against colleague Major James Handley. *Id.* In May 2019, Major Handley was named Acting Major of Recruitment and became permanently assigned to the Recruitment Section in July 2019. (ECF No. 20 at 8.) In July 2019, Major Handley ordered Plaintiff into his office and told her that they would have been friends if she could "learn to shut the fuck up and mind [her] own fucking business." *Id.* Major Handley proceeded to state that "he would retaliate against anyone that made a statement against him and the Deputy Commissioner Gillis w[ould] support his every move." *Id.* The following month, Plaintiff witnessed Handley call a

3

Department applicant a racial slur. *Id.* Plaintiff subsequently filed a formal complaint about Handley with the Inspector General's Office. (ECF No. 20 at 9.)

Subsequently, Plaintiff received an email from Deputy Commissioner Gillis directing her to report to his office. (ECF No. 20 at 9.) During that meeting, Gillis informed Plaintiff that he heard Plaintiff witnessed Handley use a racial slur towards an applicant. *Id.* at 10. Plaintiff responded that she did not feel comfortable speaking about the matter, to which Gillis responded that Plaintiff's decision not to speak was "smart" and he instructed her not to speak with anyone else about the incident or to otherwise tell people that she did not remember what happened. *Id.* Immediately after, Police Commissioner Harrison entered Gillis' office and Gillis exited the room. *Id.* Harrison told Plaintiff that the meeting was to discuss Handley, and Plaintiff expressed she was uncomfortable talking about the matter for fear of retaliation. (ECF No. 20 at 10.) Harrison assured Plaintiff that he asked Gillis to exit the room because he would not allow for any retaliation to result from the meeting. *Id.*

Harrison explained that he became aware of Plaintiff's complaint based on a phone call from City Hall, which housed the Inspector General's Office. (ECF No. 20 at 11.) Harrison then asked Plaintiff whether she filed a complaint with the Inspector General's Office, to which she responded in the affirmative and again communicated her fears of retaliation amidst the toxic and hostile work environment. *Id.* Two weeks after Plaintiff's meeting with Police Commissioner Harrison, "Major Handley became increasingly antagonistic" and even remarked to co-workers that Plaintiff was a "little, short bitch" that was "getting herself involved in shit that has nothing to do with her." (ECF No. 20 at 12.)

In August 2019, Sergeant Regina Richardson approached Plaintiff and informed her that the applicant against whom Major Handley made the racial remarks was fabricating his story. *Id.* at 13. Plaintiff then countered that Richardson was not present during the interaction, to which Richardson told Plaintiff to mind her own business. *Id.* That same day, Plaintiff emailed Richardson accounts of Handley's unlawful and inappropriate behavior; Richardson forwarded that email to Department personnel, including Deputy Commissioner Gillis. *Id.*

That same month, Plaintiff applied for a position in the Homicide Unit, but did not receive the transfer. *Id.* After her denial, Plaintiff learned that Sergeant Kevin Brown "was boasting about his ability to ensure that Plaintiff would not be selected for that position due to her previous complaints about Major Handley." (ECF No. 20 at 13.) Plaintiff then filed an Internal Affairs case against Richardson and Brown "after preventing her from being considered" for the position within the Homicide Unit. *Id.* at 14.

In October 2019, the Public Integrity Bureau initiated an investigation against Plaintiff based on her email to Richardson detailing Handley's inappropriate behavior, which included Plaintiff's statement to Richardson that Richardson was a "white woman trapped in a black woman's body." *Id.* at 14. On January 16, 2020, Plaintiff attended a meeting conducted by the Department to address the investigation against her and she provided a recorded statement expressing the perspective of the email. *Id.* That same day, Internal Affairs ordered Plaintiff to make a statement about Handley's use of a racial slur towards an applicant. (ECF No. 20 at 15.) During that meeting, Plaintiff learned that Richardson and Handley accused Plaintiff of having a friendship with the applicant. *Id.* After investigation and subpoena of Plaintiff's telephone records, Internal Affairs determined that Richardson and Handley's narrative was

false, and that Plaintiff had no prior contact with the applicant. *Id.* Handley retired shortly thereafter. *Id.*

In July 2020, Richardson's case against Plaintiff was sustained and Plaintiff received a proposed punishment that included a fifteen-day suspension, letter of reprimand, and a required workplace violence training seminar. (ECF No. 20 at 16.) Deputy Commission Nadeau assured that this punishment would not affect Plaintiff's promotional opportunities, and that she should accept the proposed punishment because "if a white officer had sent that email they would have been fired." *Id.* Two months later, Plaintiff was transferred without explanation (and against Department policy) to the Special Events Unit. *Id.* at 17. Plaintiff's previous position was permanently filled by Richardson under Handley's orders. *Id.*

In December 2020, Plaintiff met with Major Corbett, her direct supervisor. *Id.* Corbett informed Plaintiff that prior to her transfer, Gillis called Corbett and advised him to be wary of Plaintiff. (ECF No. 20 at 17.) Gillis ordered Corbett to "closely observe Plaintiff, document her every move, and intentionally make her uncomfortable by reprimanding her for any infraction." *Id.* Corbett stated that since that conversation with Gillis, Gillis would ask Corbett each time they saw each other "whether Plaintiff had yet committed any violations that could substantiate a charge against her." *Id.*

In June 2021, Plaintiff contacted the Department's Equity Officer Bill Joyner to express her grievances and concerns about her denied promotion and requested to review the Promotional Committee's notes to understand where she needed to improve. *Id.* Mr. Joyner declined Plaintiff's request to review the notes, but explained and confirmed that Plaintiff was denied the promotion because she did not meet the qualifications of the draft policy. (ECF

No. 20 at 19.) Plaintiff expressed her concern that her denied promotion was pretextual and an act of retaliation due to her complaints against Handley and Joyner stated he would conduct an independent investigation into the matter. *Id.* On June 25, 2021, Plaintiff spoke with Mr. Joyner again about his investigation and he responded that he was aggregating the records and would follow up with Plaintiff in a few weeks. *Id.* at 20. Four days later, Plaintiff received an Absent Without Leave notice for failure to attend the June 20, 2021, shift at the Orioles game. *Id.* Three weeks later, Plaintiff was denied another transfer opportunity. *Id.* at 22.

On August 10, 2021, Plaintiff was called by Major Corbett for a meeting and upon arrival, Plaintiff saw that Reinhard was present. *Id.* Plaintiff refused to sit down and expressed that she was tired of being targeted and mistreated by her unit. (ECF No. 20 at 22.) Despite this proclamation, Corbett instructed her to pay attention to the work at hand. *Id.* That same day, Plaintiff "was ordered to take a Fitness for Duty Examination." *Id.* at 23. The next day, Plaintiff informed Corbett that she would be out on medical leave effective immediately due to her depression and anxiety as a result of the work environment. *Id.* Plaintiff detailed the August 10, 2021 meeting in a report to Captain Frederick Stewart "in fear of further discipline from Major Corbett." *Id.* at 24. On August 15, 2021, Plaintiff was denied another transfer opportunity. (ECF No. 20 at 24.) On August 24, 2021, Plaintiff filed suit in this Court. (ECF No. 1.)

On May 3, 2022, this Court issued a Memorandum Opinion and Order dismissing Plaintiff's initial Complaint. (ECF No. 14.) That Memorandum dismissed four of Plaintiff's original claims with prejudice, but dismissed Plaintiff's retaliation and hostile work environment claims without prejudice, allowing Plaintiff leave to file an Amended Complaint.

7

*Id.* Plaintiff filed an Amended Complaint on May 24, 2022 (ECF No. 15), and Defendant responded with a Motion to Dismiss (ECF No. 16). Plaintiff was subsequently given time to amend her Amended Complaint (ECF No. 19), and filed her Second Amended Complaint on August 11, 2022. (ECF No. 20.) Defendant's instant Motion to Dismiss ensued. (ECF No. 21.)

Defendant's Motion largely argues that Plaintiff failed to fix the deficiencies highlighted by the Court's May 3, 2022, Memorandum Opinion. (ECF No. 21.) More specifically, Defendant asserts that Plaintiff failed to plead facts sufficient for any element of a hostile work environment, and Plaintiff failed to plead causation necessary for a retaliation claim. (ECF No. 21-1 at 7-11.) Defendant further insists that Plaintiff's Second Amended Complaint fails identify any right or policy that the BPD violated for a successful Section 1983 claim. (ECF No. 20-1 at 16-17.) In addition, Defendant contends that Plaintiff fails to state a claim under the MFEPA because she failed to comply with notice requirements and additionally because BPD has sovereign immunity. (ECF No. 20-1 at 19-22.)

Plaintiff's Opposition highlights that she was a victim of increasing retaliatory and discriminatory behavior over a three-year time period sufficient to prove the elements of a hostile work environment. (ECF No. 22-1 at 4.) In addition, she argues that her numerous meetings with BPD leadership immediately following her protected activities show causation necessary for a retaliation claim. (ECF No. 22-1 at 9.) Further, Plaintiff contends that the "custom of retaliation was so pervasive" and "protected" by BPD leadership that it created an unconstitutional policy under Section 1983. (ECF No. 22-1 at 12.) Finally, Plaintiff urges that her EEOC filing constituted notice under the Local Government Tort Claims Act and BPD

is not subject to sovereign immunity, thereby rendering her MFEPA claim sufficiently plead. (ECF No. 22-1 at 13-14.) For the reasons that follow, Plaintiff's hostile work environment and Section 1983 claims fail and shall be dismissed with prejudice; her Maryland Fair Employment Practices Act ("MFEPA") claim similarly fails and shall be dismissed without prejudice. Conversely, Plaintiff's retaliation claim survives Defendant's Motion to Dismiss.

## STANDARD OF REVIEW

Defendant argues dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) for all claims, and alternatively argues failure to state a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) asserting sovereign immunity as to Plaintiff's MFEPA claim. (ECF No. 21-1). Accordingly, each standard of review is explained below.

**I.    Motion to Dismiss for Failure to State a Claim.**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L. Ed. 2d 179 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one

for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## II.   Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Defendant alternatively asserts a facial challenge to this Court's subject matter jurisdiction over Plaintiff's MFEPA claim, arguing that it is immune to suit in federal court under the Eleventh Amendment to the United States Constitution. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity deprives the court of subject matter jurisdiction).   A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).   The Defendant in this case presents a facial challenge and accordingly "must show that [the] complaint fails to allege facts upon which subject matter can be predicated." *Amador v. Mnuchin*, ELH-20-1102, 2020 WL 4547950, at *5 (D. Md. Aug. 5, 2020) (quoting *Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018)).

## ANALYSIS

## I.   Hostile Work Environment (Count I)

Grant's Second Amended Complaint fails to plead a hostile work environment. To state a claim under Title VII for hostile work environment based on race or sex, the plaintiff

must allege that there was: "'(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race [or sex]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). *See also Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 309 (D. Md. 2015) (discussing the standard to establish a hostile work environment based on sex).

To analyze whether unwelcome conduct was based on a plaintiff's race or sex, the Court must look to whether the conduct was "because of" the plaintiff's race or sex. "An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (citing *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 142 (4th Cir.1996)).

In weighing whether conduct was sufficiently "severe or pervasive," courts consider the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). "To be sure, viable hostile work environment claims often involve repeated conduct." *Boyer-Liberto*, 786 F.3d at 277. Ultimately, "[w]hether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position." *Holloway v. Maryland*, No. 20-1958, 2022 U.S. App. LEXIS 11170, at *13 (4th Cir. Apr. 25, 2022).

Grant was granted leave to amend because this Court found Plaintiff's initial Complaint failed to sufficiently allege she received unwelcome conduct on the basis of her race or gender. (ECF No. 14 at 13.) Plaintiff's Second Amended Complaint fails to fix that deficiency. The Second Amended Complaint does not introduce any new facts on the basis of race or sex. In particular, the Complaint is devoid of facts that Plaintiff received unwelcomed behavior based on her race. As for unwelcome behavior based on sex, as previously explained, Plaintiff only pleads a "single, second-hand remark" that she was referenced as a "short bitch." (ECF No. 14 at 13; ECF No. 20-1 at 2.) Plaintiff's Opposition recounts incidents of perhaps "unwelcome conduct", but she fails to bridge that conduct to her race or sex.

As Defendant has appropriately noted, "Plaintiff has amended her complaint to include some boilerplate 'but for' causation language", however "[t]here is no indication that the murky, nonspecific 'unwelcome conduct'…Plaintiff alleges was based on her race or gender." (ECF No. 21-1 at 9.) This Court understands and particularly emphasizes that certain comments and conversations between and about Plaintiff are inappropriate in the workplace, but without the link between those comments and her race or sex, a Title VII hostile work environment claim fails. Consequently, Defendant's Motion to Dismiss (ECF No. 21) Plaintiff's hostile work environment claim (Count I) is GRANTED and the claim shall be DISMISSED WITH PREJUDICE.

## II.   Retaliation (Count II)

As this Court has previously summarized in its Memorandum Order of May 3, 2022 (ECF No. 14), Grant's Title VII retaliation claim was dismissed without prejudice and with leave to amend. The elements of a retaliation claim are: "(1) engagement in a protected activity;

(2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)). This Court has previously held that the Plaintiff has sufficiently alleged that she was engaged in a protected activity when she complained of Major Handley's use of a racial slur and filed charges of discrimination against the BPD. (ECF No. 14 at 14.) This Court has also previously ruled that she has sufficiently alleged an adverse employment action when she was denied promotional opportunities. *Id.* at 14-15. She has now sufficiently alleged a causal link between this protected activity and the adverse employment action.

A plaintiff alleging unlawful retaliation must show that there exists a "but-for" connection between the protected activity in which she engaged and the adverse employment action which she suffered. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Causal connection may be established "through two routes." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021)). The plaintiff may provide evidence of (1) temporal proximity or (2) "the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity." *Johnson*, 839 F. App'x at 784.

A plaintiff may not assert a causal connection in a conclusory fashion, but the presence of a "close" temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that alleged "temporal proximity" must be

"very close" to satisfy this third element). If the employer did not know of the protected activity, then even temporal proximity cannot save a plaintiff's claim. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (explaining that the employer must know the employee engaged in protected activity as a prerequisite to establishing a causal connection). The United States Court of Appeals for the Fourth Circuit has not set forth a specific timeframe for what constitutes "very close." *Pascaul v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006).

In cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal citation omitted). "Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Id.* Where intervening events between the protected event and the adverse action occur regularly and can "reasonable be viewed as exhibiting retaliatory animus," there is a sufficient causal link. *Id.* at 651.

Under the second route to establish causation, Plaintiff's Second Amended Complaint has established "recurring retaliatory animus during the intervening period" which is sufficient for a prima facie showing of causation. In particular, the sequence of events between Plaintiff's complaint concerning Major Handley's use of a racial slur on August 1, 2019, and Plaintiff's denied transfer to the Homicide Unit were expressly linked to Sergeant Kevin Brown's explicit statement that Plaintiff "would not be selected for that position due to her previous complaints against Major Handley." (ECF No. 20-1 at 13-14.) Further, Plaintiff alleges that both Gillis and Harrison made explicit comments to Plaintiff discouraging her to speak out about the

incident, amounting to the type of "recurring retaliatory animus" necessary to show causation at this stage.  Additionally, and more generally, Plaintiff has established a pattern of denied transfer opportunities in close temporal proximity to filed complaints. Accordingly, Plaintiff's claim for retaliation under Title VII (Count II) is sufficient at the dismissal stage and Defendant's Motion to Dismiss (ECF No. 21) this claim is DENIED.

## III.    Section 1983 (Count III)

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured ...." § 1983. Section 1983 does not create "substantive rights"; rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

Commonly referred as a *Monell* claim, municipalities are subject to suit under 42 U.S.C. § 1983 where (1) "the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978); *See also Walker v. Prince George's Co.*, 575 F.3d 426, 431 (4th Cir. 2009) (stating that the liability of the municipality only arises where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom). "The policy or custom may be [1] 'an express

16

policy, such as a written ordinance or regulation'; [2] a decision by 'a person with final policymaking authority;' [3] 'an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens;' or [4] 'a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.'" *Lyles v. Prawdzik*, No. PWG-15-1056, 2016 WL 3418847, at *4 (D. Md. June 22, 2016) (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)). To support a § 1983 claim, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Randall v. Prince George's County*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks omitted). "A sufficiently close causal link between such a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987).

Particular to Plaintiff's claims, "[p]ublic employees enjoy the protection of antidiscrimination statutes such as Title VII as well as the protection of the Constitution, which they may enforce against their employers in civil actions pursuant to 42 U.S.C. § 1983." *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2754 (2021). The Fourth Circuit has determined that a plaintiff may assert a Section 1983 claim based on violations of the Fourteenth Amendment Equal Protection Clause where there is intentional sex discrimination and sexual harassment. *Id.* at 458. Conversely, the Fourth Circuit does not recognize "an equal protection right to be free from retaliation." *Id.* Instead, a retaliation claim

asserted under Section 1983 is more appropriately plead when a plaintiff alleges violation of her First Amendment right to free speech. *Id.* at 458-59.

Plaintiff's Second Amended Complaint asserts a Section 1983 claim for violation of her Fourteenth Amendment liberty interests based on her race and acts of retaliation. (ECF No. 20 at 31.) Plaintiff's Opposition clarifies that she claims BPD has a persistent and widespread practice of unlawful retaliation in violation of federal law. (ECF No. 22-1 at 12.) In reviewing Plaintiff's Second Amended Complaint in conjunction with her Opposition, it appears that Plaintiff attempts to hold BPD liable under Section 1983 based on the theory that BPD's alleged retaliation violated the Fourteenth Amendment's Equal Protection Clause. This Court follows Fourth Circuit precedent and shall dismiss Plaintiff's Section 1983 claim because "a pure retaliation claim is not cognizable under the Equal Protection Clause." *Wilcox*, 970 F.3d at 455 (4th Cir. 2020). Accordingly, Plaintiff's Section 1983 claim is not cognizable and Defendant's Motion to Dismiss (ECF No. 21) this claim (Count III) is GRANTED.[1] Plaintiff's Section 1983 claim is DISMISSED WITH PREJUDICE.

## IV. Maryland Fair Employment Practices Act (Count IV)

Defendant contends that Plaintiff's Maryland Fair Employment Practices Act ("MFEPA") claim fails because "1) Plaintiff failed to provide the required notice under the LGTCA; 2) BPD has sovereign immunity; 3) for the same reasons her Title VII claims fail." (ECF No. 21-1 at 18.) Because this Court finds in favor of Defendant's second argument, the alternative assertions will not be addressed. The Maryland Fair Employment Practices Act

---

[1] Even under a traditional *Monell* analysis, Plaintiff's argument would still fail. Defendant aptly notes that "Plaintiff's incident alone is not sufficient for *Monell* liability to attach." (ECF No. 21-1 at 18.) Though Plaintiff herself may have been subject to retaliation within the BPD, there is no indication that such behavior has become a "custom" among the Department.

18

("MFEPA") is "the State law analogue to the federal employment discrimination statutes." *See Ensor v. Jenkins*, No. ELH-20-1266, 2021 WL 1139760, at \*18 (D. Md. Mar. 25, 2021). "Maryland courts 'traditionally seek guidance from federal cases in interpreting [it].'" *Id.* (quoting *Eubanks v. Mercy Med. Ctr., Inc.*, WDQ-15-512, 2015 WL 9255326, at \*7 (D. Md. Dec. 17, 2015) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)). Accordingly, MFEPA adopts the same substantive standards and burden of proof as Title VII. *Limes v. American Fed'n of State Cnty. & Mun. Emps. Union (Local 2250)*, No. PX-19-03225, 2020 WL 1914806 at \*2 (citing *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 498 n.2 (D. Md. 2019)).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment immunizes states, state agencies, state instrumentalities, and state officials sued in their official capacities from suit by private parties in federal court." *Windsor v. Bd. of Educ. of Prince George's Cty.*, TDC-14-2287, 2016 WL 4939294, at \*10 (D. Md. Sept. 13, 2016). *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Bland v. Roberts*, 730 F.3d 368, 389-91 (4th Cir. 2013). Eleventh Amendment sovereign immunity is not absolute. The state may waive its sovereign immunity and consent to suit in federal court.

The United States Court of Appeals for the Fourth Circuit has determined that the consent to suit provision in the MFEPA "does not 'specify the State's intention to subject itself to suit in *federal court*,' [and]… cannot be read to waive the State's Eleventh Amendment immunity." *Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019)

(citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). Judge Blake of this Court has explained that the BPD is an agency of the State of Maryland and "[w]hile the State may waive its Eleventh Amendment immunity, it has not done so with respect to the MFEPA." *Effland v. Baltimore Police Dep't*, No. 1:20-CV-3503-CCB, 2022 WL 3107144, at *6 (D. Md. Aug. 4, 2022) (citing PUB. LOCAL LAWS OF MD., Art. 4, § 16-2 (a) (2021)). Therefore, the Baltimore City Police Department has properly asserted sovereign immunity as a defense to claims brought under the MFEPA in federal court. Accordingly, this Court lacks subject-matter jurisdiction over Plaintiff's MFEPA claim and it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] Therefore, Defendant's Motion to Dismiss (ECF No. 21) this claim (Count IV) is GRANTED and this claim is DISMISSED WITHOUT PREJUDICE.[3]

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 21) is GRANTED IN PART AND DENIED IN PART. Specifically, Grant's hostile work environment (Count I) and Section 1983 (Count III) claims are DISMISSED WITH PREJUDICE. Grant's Maryland Fair Employment Practices Act (Count IV) claim is

---

[2] Plaintiff's MFEPA claim in her Second Amended Complaint fails to correct her shortcomings from her original Complaint. Therefore, even if sovereign immunity were inapplicable here, Plaintiff's MFEPA discrimination claim would have failed nonetheless for the reasons set forth in this Court's previous Memorandum Order. (ECF No. 14) ("those claims are subject to dismissal with prejudice for failure to exhaust administrative remedies").

[3] Dismissal of claims based on lack of subject matter jurisdiction must be without prejudice in accordance with precedent from the United States Court of Appeals for the Fourth Circuit. *Effland*, 2022 WL 3107144, at *6 n.8.

DISMISSED WITHOUT PREJUDICE. Grant's Title VII retaliation claim is sufficiently pled and survives the pleading stage.

A separate Order follows.

Dated: November 7, 2022                              _____/s/_____
                                                    Richard D. Bennett
                                                    United States District Judge