UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WELAI GRANT,** | * |
| Plaintiff | * |
| vs. | *  Civil Action No.: RDB-21-2173 |
| **BALTIMORE POLICE DEPARTMENT,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT BALTIMORE POLICE DEPARTMENT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Plaintiff's opposition misinterprets the legal standard for summary judgment motions and does not point to any material fact in dispute necessary to survive the motion. Plaintiff continues to rely on the Court's ruling at the 12(b)(6) stage of litigation, and argues that she is excused from establishing a prima facie case for retaliation. This is incorrect. Plaintiff is required to establish a prima facie case and has failed to do so. However, even if she accomplished this necessary task, she has not rebutted BPD's stated non-retaliatory reasons for its actions under the *McDonnell Douglas* framework. As such, the Court should grant summary judgment in BPD's favor.

**I.      Plaintiff has not made out a prima facie case.**

Plaintiff argues that she does not need to make out a prima facie case, misapplying language from St. *Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). *See, e.g.*, ECF No. 51-1 at 4 ("In the years since *McDonnell Douglas*, the Supreme Court has clarified that whether the employee made out a prima facie case is almost always irrelevant."). However, *Hicks* does not stand for the proposition that a plaintiff does not need to make out a prima facie case, but states that where the defendant meets its burden of production under *McDonnell Douglas* "and has thus rebutted any

1

legal presumption of intentional discrimination," the McDonnell Douglas framework is no longer relevant to a finding of whether the Defendant actually is guilty of violating Title VII. *See id.* at 512-14. *See also Tx. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981) ("The allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination."). In *U.S Postal Service Board of Governors v. Aikens*, also cited by Plaintiff in ostensible support, the case was fully tried on the merits, therefore the Court found the focus on whether plaintiff made out a prima facie case to have "unnecessarily evaded the ultimate question of discrimination *vel non*." 460 U.S. 711, 713 (1983). There is no case law of which BPD is aware that would relieve Plaintiff of her burden to establish a prima facie case. She has not done so, and therefore, the Court should grant summary judgment.

> A. *Protected Activity*

In discussing her involvement in protected activity, Plaintiff complains in her opposition about details that have no bearing on her lawsuit, like whether Major Handley had been in Recruitment previously and a 2018 incident for which she reported Major Handley which is "not addressed by Defendant anywhere in its filing." ECF No. 51-1 at 5. Nonetheless, under the facts of this case, Defendant does not dispute that filing an EEOC and/or Internal Affairs complaint is protected activity.

> B. *Adverse Employment Action*

Crucial to establishing a prima facie case is the existence of an adverse employment action. The AWOL investigation, failure to transfer, and reassignments are simply not materially adverse employment actions under the facts of this case and relevant caselaw.

First, as to the reassignments, Plaintiff testified under oath that she did not file a grievance contesting the transfers under the Memorandum of Understanding between her union and BPD, and thus did not avail herself of the process by which BPD employees may protest a management personnel decision. Ex. D to Motion for Summary Judgment, ECF No. 43, Grant Depo., T.93:1-2. She states in her opposition that she was told that she could not file a grievance but has produced no facts or admissible evidence to support this inadmissible hearsay. ECF No. 51-1 at 7. Plaintiff chose not to exhaust her administrative remedies, and instead improperly complains about the reassignments to the Court. *See Ancient Coin Collectors Guild v. U.S. Customs & Border Protection*, 801 F.Supp.2d 383 (D. Md. 2011) (citing *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor*, 118 F.3d 205, 209 (4th Cir. 1997) ("When a party seeks judicial review of an agency decision, the party is generally required to "exhaust prescribed administrative remedies before seeking relief from the federal courts," which "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.").

Plaintiff next complains that in her reassignments, she was "deterred" from seeking overtime because it was a more burdensome process. ECF No. 51-1 at 7. Plaintiff has adduced no evidence regarding a lack of overtime opportunities, or the "burden" in getting overtime assignments in the units to which she was transferred versus the Recruitment Unit, aside from her own self-serving testimony, which cannot defeat summary judgment. *See, e.g., Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)) ("[A] party's 'self-serving opinion...cannot, absent objective corroboration, defeat summary judgment'."). In fact, Plaintiff readily admitted in her deposition that overtime was available, but she did not pursue it. Ex. D to Motion for Summary Judgment, ECF No. 43, Grant Depo., T.193:16-21. Dissatisfaction with work assignments does not rise to the level of an adverse action. *See, e.g., White v. City of Annapolis* (MD), No. JFM-13-

1330, 2015 WL 5009853, at *8 (D. Md. Aug. 21, 2015), *aff'd sub nom. White v. City of Annapolis, Md.*, 639 F. App'x 209 (4th Cir. 2016) ("'[D]issatisfaction with work assignments' does not rise to the level of an adverse employment action"). It necessarily follows that employees are not entitled to assignments of their choosing, or the overtime hours or overtime assignments of their choosing.

Plaintiff next complains that the reassignments were adverse because she does not have supervisory duties in her new assignment. ECF No. 51-1 at 7. In her deposition, however, Plaintiff stated that in her current assignment "I am in charge of the KGA supervisor, ensuring that there's coverage at all times . . ." Ex. D to Motion for Summary Judgment, ECF No. 43, Grant Depo., T:.86:21-22. Plaintiff's complaint that her transfer to Communications "reflected negatively on her professional reputation" is likewise unavailing. ECF 51-1 at 7. Plaintiff has offered no objective evidence that working in Communications reflects negatively on her reputation or decreased her work responsibility. *See, e.g., CTB, Inc. v. Hog Slat, Inc*., 954 F.3d 647, 658 (4th Cir. 2020) (quoting *Williams v. Giant Food Inc*., 370 F.3d 423, 433 (4th Cir. 2004)) ("[A] party's 'self-serving opinion...cannot, absent objective corroboration, defeat summary judgment."); *Carson-Johnson v. Balt. City Police Dept.*, No. BPG-18-3064, 2021 WL 3930098, *4 (D. Md. Sept. 2, 2021) (granting summary judgment where plaintiff offered no evidence beyond a self-serving affidavit to show that working in Building Security was less desirable or prestigious); *Polastre-Jackson v. Colvin*, No. ELH-17-228, 2017 WL 6501800, at *1 (D. Md. Dec. 15, 2017) (stating the fact that the reassignment "entailed a removal of plaintiff's supervisory duties and a change in her title does not constitute an adverse employment action" because she did not suffer a decrease in salary or benefits and the plaintiff did not show a decrease in the level of work responsibilities") ; *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 423 (D. Md. 2006) ("That Plaintiff

4

may have felt inadequately challenged by his work is not enough to sustain his retaliation claim."); *James v. Booz-Allen & Hamilton*, 368 F.3d 371, 377 (4th Cir. 2004) (stating that a less appealing job assignment is not an adverse employment action). Here, Plaintiff has remained a sergeant t, there is no evidence that her base pay or benefits were reduced, or that her duties and responsibilities are significantly different. Her reassignments were therefore not adverse employment actions. *See, e.g., Rowlett v. Balt. City Police Dept.*, No. BPG-21-1205, 2023 WL 2664232, *13 (D. Md. Mar. 28, 2023) (desk reassignment not an adverse action); *Carson-Johnson*, 2021 WL 3930098 at *4-5 (no adverse action where employee remained a sergeant but was transferred to a less "prestigious" position).

The denied transfer opportunities are not materially adverse employment actions either. Plaintiff has adduced no evidence as to what her benefits, pay, or responsibilities would have been had she been offered the positions for which she applied. Axiomatically, a transfer to another detail within the same rank of Sergeant, which is what Plaintiff has claimed these requested transfers were, would be lateral. The denial of such a lateral move is not an adverse employment action, unless Plaintiff has evidence to show otherwise. She does not. Employees are not entitled to the assignment of their choosing. *See, e.g., Carson-Johnson*, 2021 WL 3930098 at *4. Plaintiff has not put forth any evidence that less qualified persons were offered the positions for which she applied. Absent evidence, the denied transfer opportunities cannot be considered materially adverse employment actions.

As to the AWOL charge, it is axiomatic that finding an employee AWOL is not an adverse employment action in a retaliation claim. *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp.2d 480, 492 (D. Md. 2013) (internal citations and quotation marks omitted) ("Even with this lower bar, none of the following constitutes an adverse employment action in a retaliation claim: failing

to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee AWOL; or issuing a personal improvement plan, an Attendance Warning, a verbal reprimand, a formal letter of reprimand, or a proposed termination."); *see also Settle v. Baltimore Cty.*, 34 F. Supp. 2d 969, 992 (D. Md. 1999) ("[P]laintiffs have to show not only that the disciplinary proceedings sprang from a discriminatory or retaliatory motive, but that the nature and character of the investigation, which did not lead to the imposition of discipline, actually adversely affected some term or condition of employment, i.e., inflicted an 'employment injury.' Specifically, if a disciplinary investigation is reasonably rooted in articulable facts justifying such an investigation, neither inconvenience nor emotional anxiety on the employee's part will constitute an 'employment injury' sufficient to render the investigation itself an adverse employment action independently cognizable under Title VII.").

Nor is there any evidence that a fitness for duty evaluation, for which Plaintiff met the criteria, constituted an adverse employment action. Ex. P to Motion for Summary Judgment, ECF No. 43, Brickus Decl. Because the above actions are not adverse employment actions, they should not be considered.

### C.     *Causation*

To survive summary judgment, Plaintiff must put forth some "evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Plaintiff has not connected the failure to promote (or the denied transfer requests, involuntary transfers, or AWOL investigation should the Court find them to be adverse employment actions) to her protected activity. Plaintiff claims "[b]ut for Plaintiff's advocacy against their misconduct and mistreatment of her, she likely would not have been subject to such

intense backlash and scrutiny." ECF No. 51-1 at 9. This is not evidence, but self-serving speculation. Plaintiff has not adduced any evidence that anyone on the Promotions Committee voted not to promote her due to any protected activity. In fact, declarations from the Promotions Committee members are evidence of the opposite, and the majority of the members were not even aware of the protected activity. *See* Exs. G-H and X-DD, to ECF No. 43, Decls. of Promotions Committee Members. The Fourth Circuit has made it clear that knowledge of the protected activity is required: "we have consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim.  To establish a causal relationship . . ., a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts v. Glen Industrial Group, Inc*., 998 F.3dd 111, 124 (4th Cir. 2021). And, the *Roberts* Court held that *actual* knowledge is required- constrictive knowledge is insufficient. *Id*.at 125. Plaintiff has not produced any evidence that any of the members were aware of protected activity, let alone deferred her promotion because of it. Instead, the evidence shows unequivocally that Plaintiff's disciplinary history caused her not to be promoted. *See* Exs. G-H and X-DD, to ECF No. 43, Decls. of Promotions Committee Members.

Because Plaintiff has not produced any evidence to connect her protected activity to an adverse employment action, she has not made out a prima facie case and the Court should enter summary judgment in BPD's favor. And, because Plaintiff has not made a prima facie case of retaliation, the Court need not reach the question of whether there was a legitimate, nondiscriminatory reason for the allegedly improper actions. *Burdine*, 450 U.S. at 253. However, were the Court to find that Plaintiff made out a prima facie case, her retaliation claim fails under the *McDonnell Douglas* framework as well.

    **II.**    **BPD has provided legitimate reasons for its actions, which Plaintiff has not rebutted.**

7

"Under *the McDonnell Douglas* framework, once a plaintiff meets the initial burden of establishing a prima facie case for retaliation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Maine v. Azar*, No. No. GLR- 16-3788, 2021 WL 3617215, *12 (D. Md. Aug, 16, 2001) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 285 (4th Cir. 2004). As explained at length in BPD's opening memorandum, both the Consent Decree and BPD policy dictate that an employee's disciplinary history must be considered in determining whether a candidate should be promoted. *See, e.g*., ECF No. # at 11-13, 23-25. Plaintiff was considered for promotion after she had accepted punishment for an incident involving a civilian and another sergeant, which required *workplace violence training*. This history was in her promotional packet and considered by the Promotions Committee, as necessitated by policy and the Consent Decree. *See, e.g*., Ex. G, to ECF No. 43, Nadeau Decl.; Ex. X, Melancon Decl. . BPD has met its burden that there were legitimate, non-retaliatory reasons for deferring Plaintiff's promotion.

Once the employer meets this burden of production, as BPD has done, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Hill*, 354 F.3d at 285 (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination [or retaliation], which at all times remains with the plaintiff." *Maine*, 2021 WL 3617215 at *12 (citing *Merritt v. Old Dominion Freight Line*, 601 F.3d 289, 294 (4th Cir. 2010)). Plaintiff has not offered any evidence to show that BPD's stated reasons were not its true reasons. Plaintiff complains that the policy was in draft form, but does not offer any reason or evidence why the draft policy could not be applied to Plaintiff. There was no predecessor written

policy which would have ensured Plaintiff's promotion. And, Plaintiff has adduced no evidence that the outcome would have been different absent use of the draft policy. Paragraph 432 of the Consent Decree requires consideration of Plaintiff's disciplinary history in considering her for promotion. Plaintiff's response to this fact is that Paragraph 432 does not state "that a candidate's promotion *must* be deferred if she has disciplinary actions in her record." ECF No. 51-1 at 11 (emphasis in original). This is not enough. BPD must show only that there were legitimate reasons for deferring her promotion. Plaintiff has adduced no evidence to the contrary. Plaintiff cannot save her case by reference to her own speculative inadmissible beliefs.

Plaintiff argues that BPD's reasons for the alleged adverse actions are pretextual "because Defendant failed to provide any explanations for its reasons or actions." ECF No. 51-1 at 12. This is incorrect, as explained *supra*, and as explained in BPD's opening memorandum. ECF No. 43 at 24-26. She was not promoted due to the disciplinary history. *See* Exs. G-H, X-DD, to ECF No. 43, Decls. of Promotions Committee Members. Plaintiff next argues that "Chief Nadeau concluded the training was not mandatory because no workplace violence occurred." ECF No. 51-1 at 12. This is inadmissible hearsay. No evidence has been adduced that Chief Nadeau made this statement.[1] Plaintiff agreed to mandatory workplace violence training, as shown in the paperwork provided by PIB, included in her promotional materials, and considered by the Promotions Committee. Ex. G, to ECF No. 43, Nadeau Decl. *See also* Exs. H, X-DD, to ECF No. 43, Decls. of Promotions Committee Members. Plaintiff also refers to a "joint legal settlement" in which

---

[1] Plaintiff cites Exhibit 3, ECF No. 51-6, in ostensible support for her assertion that workplace violence training was not part of her disciplinary charge and that Chief Nadeau said she did not have to do it. ECF No. 51-1 at 12. Exhibit 3 is an e-mail regarding Plaintiff's dates for loss of leave to be entered into the Workday electronic leave system. The e-mail does not reference or include Chief Nadeau and is silent on workplace violence training, which would be separate from when an employee is taking leave.

workplace violence training was not included; but if this hypothetical document exists, there is no evidence of it. . ECF No. 51-1 at 12. Nevertheless, the fact remains that whether Plaintiff completed the training or not, the Promotions Committee believed that it was part of the punishment that she accepted for a serious workplace incident.[2]

Plaintiff attached as exhibits a 14-page "Plaintiff's Genuine Issues of Material Facts in Dispute" ECF No. 51-32, and a 38-page "Plaintiff's Response to Defendant's Statement of Undisputed Facts." ECF No. 51-31. These exhibits are difficult to wade through and contextualize. To the extent that Plaintiff believes there are disputes of material fact, they should have been included and explained in the memorandum with citations to the evidence in support.[3] Notwithstanding, all of Plaintiff's facts in Exhibit No. 51-32 are either not material, are not supported by any evidence, or are legal conclusions. *See, e.g.*, *id.* at ¶ 1 "Plaintiff does not need to articulate a prima facie case of retaliation because Defendant has articulated what it alleges to be non-retaliatory reasons for its actions . . ."[4] (legal conclusion)); ¶ 41 ("Whether the candidate selected for the Use of Force Section over Plaintiff was a better fit/more qualified for the Section"

---

[2] Plaintiff states in her "Response to Defendant's Statement of Undisputed Facts," filed as a 38-page exhibit, that her incident was not a Category E/F offense and that "long after Plaintiff was scheduled to receive a promotion, Defendant revised its 2020 findings in the investigation to redesignate Plaintiff's disciplinary action as Category E/F. Plaintiff asserts that this change was retaliatory, with the intent of preventing her promotion." ECF No. 51-31 at ¶ 43. BPD does not know what this means; regardless, it suffices to say that Plaintiff has not adduced any evidence that the entire disciplinary matrix was redone (which would have been subject to the Consent Decree process) in an attempt to retaliate against her.

[3] Court memoranda in opposition to a motion shall not exceed thirty (30) pages. U.S Dist. Ct. for Dist. of Md. Local Rule 105.3. Although the page limitation excludes exhibits, it does not exclude the recitation of facts.

[4] This is a curious contention. Elsewhere, Plaintiff argues that "the entirety of Defendant's Memorandum is centered on arguing that Plaintiff has failed to establish a prima facie case." ECF No. 51-1 at 11.

10

(no evidence adduced in support)); ¶ 12 ("Whether Plaintiff confronted Sgt. Richardson in her office on September 4, 2019" (not material)).[5] Plaintiff cannot undermine BPD's stated rationale "as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be 'material.'" *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir.2006) (internal citation omitted).

Lastly, Plaintiff argues that BPD is "relitigating its prior Motion to Dismiss" and "seemingly asks that Plaintiff litigate her case via her Opposition with all relevant evidence and proof of her claims." ECF No. 51-1 at 12-13. Plaintiff is confusing the purpose of dispositive motions and ignores the burdens of proof required at each stage. Far from "relitigating" its Motion to Dismiss, BPD is presenting the testimony, evidence, and documents gathered through discovery in a manner which compels dismissal of this case due to Plaintiff's failure to meet her burden. BPD absolutely *is* asking that Plaintiff provide evidence and proof of her claims, as summary judgment requires. Motions to dismiss and motions for summary judgment are decided under different legal standards. On a motion to dismiss, the Court must take all facts as true. *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). At the summary judgment stage, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quotation omitted). And, a "[p]laintiff may not simply rely on a prior court order that assumed

---

[5] The details of the incident for which Plaintiff was disciplined are not material. What is material is that Plaintiff accepted punishment for the infraction (which included suspension and mandatory workplace violence training) and that the Promotions Committee saw the discipline in her promotion materials, and considered it, as required by the Consent Decree and BPD policy.

11

facts as true to establish that those facts are indeed true." *Rowlett v. Balt. City Police Dept.*, No. BPG-21-1205, 2023 WL 2664232, *9 (D. Md. Mar. 28, 2023) (citing *McCloud v. Rice*, 2022 WL 18146043 (E.D. Va. Dec. 21, 2022)). *See also Graves v. Lioi*, 930 F.3d 307, 317 (4th Cir. 2019) ("There is nothing remarkable in concluding that some plaintiffs whose claims survive a motion to dismiss are unable to meet their burden to survive summary judgment.").[6]

Plaintiff argues that "[a]t trial, it is anticipated that the Plaintiff and her fellow officers can and will testify as to the targeted nature of Defendant's actions as motivated by retaliation." ECF No. 51-1 at 14. Plaintiff's self-serving and unsupported proclamations that BPD retaliated against her are insufficient to defeat summary judgment. She has produced no evidence from fellow officers regarding the alleged retaliation, has no documentation to support her claims, and has not offered any testimony at all from anyone other than herself. Plaintiff "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985); *see also Casey*, 823 F. Supp. 2d at 349. To survive summary judgment, Plaintiff must present "significant[ly] probative" and "affirmative evidence" to support the allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Hearsay and self-serving, uncorroborated assertions are insufficient. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Plaintiff has not adduced any evidence that BPD was improperly motivated. She is required to produce evidence – not just allegations or "anticipation" – at the summary judgment stage. The Court should grant summary judgment because courts are obligated to "prevent factually unsupported claims and defenses from proceeding to trial."

---

[6]    In *Rowlett*, the Court repeatedly noted that the plaintiff incorrectly and inappropriately believed, at the summary judgment stage, that she could "simply rely on Judge Gallagher's prior opinion addressing a motion to dismiss." *Rowlett*, 2023 WL 2664232 at *14. In the instant case, Plaintiff makes the same mistake, continuing to rely on the Court's motion to dismiss ruling.

*Bouchat*, 346 F.3d at 526 (4th Cir. 2003) (quotation omitted). BPD has met its burden under the *McDonnell Douglas* framework and Plaintiff has offered nothing in rebuttal.

## CONCLUSION

For the foregoing reasons, BPD respectfully requests that this Honorable Court grant its motion and enter judgment in favor of BPD.

>
> Respectfully submitted,
>
> EBONY M. THOMPSON
> Acting City Solicitor
>
> Justin S. Conroy (28480)
> Chief Legal Counsel
>
> _____/s/_____
> Kara K. Lynch (29351)
> Alexa E. Ackerman (19943)
> Chief Solicitors
> Baltimore City Department of Law
> Office of Legal Affairs
> City Hall, Room 101
> 100 N. Holliday Street
> Baltimore, MD 21202
> kara.lynch@baltimorepolice.org
> alexa.ackerman@baltimorecity.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September, 2023, the foregoing Reply in Support of Motion for Summary Judgment was electronically filed in accordance with the Electronic Filing Requirements and Procedures as established by the U.S. District Court for the District of Maryland and sent to counsel of record via CM/ECF.

>
> _____/s/_____
> Kara K. Lynch (29351)